NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JULIO ANGEL LOPEZ,**

     **Plaintiff,**

**-vs-**                  **Case No. 6:12-CV-901-31KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Julio Angel Lopez seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 13, 14, and the parties' memoranda, Doc. Nos. 17, 18.  This matter has been referred to the undersigned for issuance of a Report and Recommendation.

## PROCEDURAL HISTORY.

In 2010, Lopez filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* (sometimes referred to herein as the "Act").  He alleged that he became disabled on January 11, 2010.  R. 122, 126.

NOT FOR PUBLICATION

After his applications were denied initially and on reconsideration, an administrative law judge ("ALJ") held a hearing at Lopez's request. Lopez, represented by an attorney, and a vocational expert ("VE") testified at the hearing. R. 24-46.

After considering the testimony and the medical evidence presented, the ALJ determined that Lopez was insured under OASDI through December 31, 2014. R. 14. The ALJ found that Lopez had not engaged in substantial gainful activity since January 11, 2010, the alleged disability onset date. *Id.*

The ALJ concluded that Lopez had degenerative disc disease following a diskectomy and fusion surgery and that he had had a right total hip arthroplasty, which were severe impairments. R. 14. The ALJ found that Lopez's impairments or combination of impairments did not meet or equal any listed impairment. *Id.*

The ALJ found that Lopez had the residual functional capacity ("RFC") to do the following:

> [P]erform the full range of light work . . . . The claimant is capable of: occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds/ standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday.

R. 15. In making this assessment, the ALJ gave weight to the RFC assessment prepared by Frances Sandler, M.D., a reviewing physician. R. 17.[1] The ALJ did not state the weight he gave to the opinion of Alvan Barber, M.D., an examining physician, or to any opinions of Lopez's treating physicians or other treatment providers.

---

[1] The ALJ referred to this physician as Dr. Sedler. R. 17.

NOT FOR PUBLICATION

The ALJ concluded that Lopez could return to his past relevant work as a building and ground supervisor both as the job was actually and generally performed.  R. 17-18.  In reliance solely on the Medical-Vocational Guidelines, commonly referred to as the "Grids," the ALJ also concluded that there were unspecified jobs available in the national economy that Lopez could perform.  R. 18-19.  Therefore, the ALJ concluded that Lopez was not disabled.  R. 19.

Lopez sought review of the ALJ's decision by the Appeals Council.  R. 5.  On April 16, 2012, the Appeals Council issued a decision finding no basis to change the ALJ's decision.  R. 1-3.

Lopez seeks review of the Commisioner's decision by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Lopez having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).  A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citations omitted), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

NOT FOR PUBLICATION

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' memoranda and in the ALJ's decision. Accordingly, I will only summarize facts necessary to address the issues raised in order to protect Lopez's privacy to the extent possible.

Lopez was born in 1966. R. 122. He completed school through the eleventh grade. R. 29. He had some basic vocational training in air conditioner refrigeration and locksmithing. R. 30-31.

From 1987 to 1997, he worked as a doorman/porter at a condominium. R. 152. This job required him to walk, stand, stoop, kneel, crouch, crawl, reach, and lift and carry ladders and luggage that weighed up to 60 pounds occasionally and 20 to 40 pounds frequently. R. 166. The VE classified this job as unskilled work requiring heavy exertion (DOT 323.687-018). R. 27.

From 1998 through 2005, he worked installing ducts and air conditioning units and cleaning air conditioning coils. R. 31-32, 152. This job required him to walk, climb, stoop, kneel, crawl and reach. He frequently lifted 20 pounds. R. 168. The VE classified this job as skilled work requiring a medium level of exertion (DOT 637.261-014). R. 27.

From 2008 through 2010, he worked at the Masters Academy school as a supervisor and maintenance person. He did troubleshooting and repair, including some minor lock repair and basic electrical work. R. 31-32, 170. During this job, he had to walk, climb, kneel and grasp big objects such as ladders and janitorial goods. He had to push or pull 300 to 400

NOT FOR PUBLICATION

pounds. He lifted 20 pounds frequently. R. 170. The VE classified this job as skilled work requiring a light level of exertion (DOT 891.137-010). R. 28.

The ALJ did not ask the VE about other requirements of these jobs or about whether there were other jobs available in the national economy that Lopez could perform.

Medical records reflect that Lopez began treatment at Florida Orthopedic Associates, P.A., in 2006 for back and knee pain. R. 221. Tests revealed a left central disc herniation with radiculopathy and left knee patellar tendinitis. R. 219. Stephane Lavoie, M.D., diagnosed chronic low back pain, lumbar degenerative disc disease and lumbar spondylosis. R. 213, 215.

Lopez had physical therapy in 2008. R. 225-31. Raul Rodas, D.O., performed back surgery on January 9, 2009. R. 239-41. As of February 18, 2009, Lopez had returned to work. R. 244. At that time, Lopez was in pain and walked with a limp. R. 34-35. In March 2009, Dr. Rodas continued to prescribe Dilaudid, for pain, and Soma, a muscle relaxer. R. 243.

On March 23, 2010, Alvan Barber, M.D., examined Lopez at the request of the SSA. Lopez complained of chronic back pain. He could not climb, run, walk or stand for long periods of time. He could not bend, squat or kneel. Dr. Barber observed that Lopez had a right limp. R. 273. Upon examination, Dr. Barber found that Lopez had low back pain during straight-leg raising tests. Lopez was not able to squat. R. 276. He had some reduced range of motion in the lumbar and cervical spine. R. 278. Dr. Barber's impression was that Lopez had lumbar degenerative disc disease with pain. He opined that Lopez could not walk and stand for long periods of time and could not kneel, crawl, or squat. R. 277.

NOT FOR PUBLICATION

On May 5, 2010, Frances Sandler, M.D., prepared an RFC assessment based on review of Lopez's records. R. 281-88. Dr. Sandler opined that Lopez could lift 20 pounds occasionally and 10 pounds frequently. He could sit, stand or walk about 6 hours in an 8-hour workday. R. 282. He could only occasionally climb ladders, ropes and scaffolds and occasionally stoop. R. 283. He found that Lopez's allegation of low back pain and arthritis with degenerative disc disease of the lumbar spine was credible. R. 286.

Thereafter, Lopez was diagnosed with bone-on-bone arthritis in the right hip. Stephen M. Reed, M.D., performed right total hip arthroplasty surgery on October 20, 2010. R. 292-96. The record before the Court contains no medical records regarding Lopez's condition following the surgery.

Lopez testified that, after the hip replacement surgery, he still had problems with stability, particularly if he stood up too quickly or bent down to grab something. R. 38-39. He walked with a cane. R. 40. He also experienced pin and needles, and numbness in his right leg and sometimes in his left leg. R. 38. He took Aleve for pain, but it caused stomach aches. R. 39.

He also had arthritis in his hands and throughout his body. As a result, he could not close one hand completely. R. 44; *see also* R. 150 (arthritis included in disability report).

He could not stand for more than 1 or 2 hours using the cane as support. R. 41. He could walk about 2 blocks before feeling pain in his back and being exhausted. He could sit for about 1 hour, changing positions frequently. Sitting too long caused numbness from his waist to his leg. R. 42. He did volunteer work at church, but he could not always help when he had a bad day. R. 41.

NOT FOR PUBLICATION

## ANALYSIS.

Lopez asserts several interrelated assignments of error. I address only some of them in detail because they are dispositive.

*Opinions of Treating, Examining and Reviewing Physicians.*

Lopez contends, initially, that the ALJ erred by failing to state the weight given to the opinions of treating and examining physicians. The social security regulations recognize a hierarchy of medical opinions. Opinions of treating physicians are entitled to substantial or considerable weight unless an ALJ clearly articulates good cause not to do so. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Opinions of medical professionals who did not examine a claimant are also opinion evidence that an ALJ may consider in making a disability determination. 20 C.F.R. 404.1527(e). However, opinions of examining medical sources are usually given more weight than the opinion of someone who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). An ALJ is also entitled to consider the opinions of treatment providers who are not "acceptable medical sources," including nurse-practitioners and physical therapists. 20 C.F.R. § 404.1513(d).

The United States Court of Appeals for the Eleventh Circuit requires an ALJ to "state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by evidence.'" *Id.*

NOT FOR PUBLICATION

Lopez contends that the ALJ erred by failing to state the weight given to treating physicians who cared for him from 2006 through 2009, well before the disability onset date. The Commissioner correctly notes that Lopez was working during this period and, therefore, the evidence is relevant only as background for the claim that he became disabled as of January 11, 2010. Neither party cites any controlling law that requires an ALJ to state the weight given to medical opinions that substantially predate the alleged date of disability when, as here, there was intervening surgery.

Lopez also argues that the ALJ erred by giving weight to the opinion of Dr. Sandler, who did not examine him, rather than crediting the opinion of Dr. Barber, who did examine him. The ALJ did not state what weight he gave to Dr. Barber's opinion. Instead, he found that Dr. Sandler's RFC assessment was "generally consistent with Dr. Barber's opinion that the claimant cannot walk and stand for long periods." R. 17. Even if this finding is supported by substantial evidence[2], it is insufficient to satisfy the requirements of *Winschel*, because Dr. Barber's opinion and Dr. Sandler's opinion differed in other respects. Specifically, Dr. Barber opined that Lopez could not kneel, crawl or squat while Dr. Sandler opined that Lopez would have no limitations in these postural activities but that he would be limited to occasionally climbing ladders, ropes and scaffolds and occasionally stooping.

The failure to include any postural limitations in the RFC, or to articulate good cause for not doing so, is not harmless. The ALJ found that Lopez could return to his past relevant

---

[2] Lopez argues that Dr. Barber's finding that he could not stand and walk for long periods is inconsistent with Dr. Sandler's finding that he could stand 6 hours and walk 6 hours in an 8-hour workday. He also argues that light work requires prolonged walking and standing, which Dr. Barber opined he could not do. Doc. No. 17 at 16 (citing Soc. Sec. Ruling 83-12).

work as a building and grounds supervisor both as he performed the job and as it was generally performed.[3] Lopez testified that he was required to kneel and climb in this job; the ALJ did not develop the requirements of the work to determine whether climbing required use of ladders, ropes or scaffolds. As generally performed, the job also requires climbing, stooping, and kneeling. DOT 891.137-010, DICOT 891.137-010. Because the building and grounds supervisor job required postural activities, it was necessary for the ALJ to explain why he did not include postural limitations in the RFC before he could properly determine whether Lopez could return to his past relevant work.

The Commissioner argues that any error in the interpretation and weight given to Dr. Barber and Dr. Sandler's opinions is harmless because the Grids would direct that Lopez was not disabled even if he could only perform sedentary work. This argument is incorrect. Social Security Ruling 96-9p states, "An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupation base and a finding that the individual is disabled would usually apply . . . ." 1996 WL 374185, at * 8 (original emphasis). If Dr. Sandler's finding that Lopez could only stoop occasionally had been credited, that finding would erode the occupational base of sedentary jobs available. Under that circumstances, reliance solely on the Grids at step five of the sequential evaluation would not be permitted. *See Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985) ("Exclusive reliance on the grids is not appropriate either when claimant is unable to

---

[3] The Commissioner concedes "that Plaintiff's past work as a building and ground supervisor may have been a composite job beyond his RFC . . . ." Doc. No. 18 at 13.

perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.").

Because the ALJ did not state the weight given to Dr. Barber's opinion, or explain why he did not include postural limitations found to exist by Dr. Barber and Dr. Sandler in the RFC assessment, the record is insufficient for the Court to determine that the decision is rationale and supported by substantial evidence.  Therefore, reversal and remand for further proceedings is required.

*Other Requirements on Remand*.

On remand, the ALJ must consider all of the evidence in the record relevant to the alleged disability period, including any new evidence that Lopez may offer.  If the ALJ rejects complaints of limitations arising from subjective complaints, including pain, he must follow the pain standard in this Circuit.  *See Foote v. Chater*, 67 F.3d 1553, 1560-61 (11th Cir. 1995).  " A clamant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Id.* at 1561.  "If the ALJ decides not to credit a claimant's testimony as to [his] pain, he must articulate explicit and adequate reasons for doing so."  *Id.* at 1561-62.

At step four of the sequential evaluation, an ALJ must develop the physical and mental demands of Lopez's past relevant work.  "Where there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the [Commissioner] cannot properly determine whether the claimant has the residual functional capacity to perform his past relevant work." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

NOT FOR PUBLICATION

At step five of the sequential evaluation, the ALJ may not rely solely on the Grids if Lopez has nonexertional impairments that limit the wide range of work he can perform at a given level of exertion. There must be evidentiary support for the conclusion about whether the occupational base of jobs at a given exertional level is eroded by nonexertional limitations. *See Emrick v. Astrue*, No. 8:08-cv-2375-T-TGW, 2009 WL 3367045, at *2-3 (M.D. Fla. Oct. 19, 2009) (and cases cited therein). When nonexertional impairments are part of the RFC, the better practice is to call a vocational expert to testimony about the work that can be performed. *Welch v. Bowen,* 854 F.2d 436, 439-41 (11th Cir. 1988).

## RECOMMENDATION.

For the reasons set forth herein, it is **RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and the case be **REMANDED** to the Commissioner for further proceedings. It is further recommended that the Court direct the Clerk of Court to issue a judgment consistent with its final order and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** this 21st day of June, 2013.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE